1  GERALD I. NEITER
   Email address: neitlaw@aol.com
2  State Bar No. 28400
   GERALD I. NEITER
3  A Professional Corporation
   1925 Century Park East, Suite 2000
4  Los Angeles, California 90067-2721
   Telephone: (310) 277-2236
5
   ROBERT A. REES
6  Email address: robertreeslaw@att.net
   State Bar No. 94295
7  REES LAW FIRM, P.C.
   1925 Century Park East, Suite 2000
8  Los Angeles, California 90067-2721
   Telephone: (310) 277-2236
9
   Attorneys for Third Party Respondents,
10 MARINA STEIN
   and FIELD CHASERS, INC., a
11 California Corporation

12                UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14                (Western Division - Los Angeles)

15

16  STATE FARM MUTUAL           )  CASE NO. 2:10-CV-01332-AHM
    AUTOMOBILE INSURANCE        )  (FFMx)
17  COMPANY and STATE FARM      )
    COUNTY MUTUAL INSURANCE     )
18  COMPANY OF TEXAS,           )  DECLARATION OF MARINA STEIN
                                )  IN LIEU OF DIRECT TESTIMONY
19        Plaintiffs,           )

20  vs.                         )  TRIAL DATE:    10/25/2011
                                )  TIME:          08:00 A.M.
21  SLAVIK STEIN, SEMYON        )  PLACE: Courtroom of Judge Matz
    SALDKEVICH, WILLIAM TIMAS,  )
22  EUGENE VLADIMIR             )
    SHVARTSBURD, MARIBELL       )
23  MCMANN, TRACY ANDERSON,     )
    MICHAEL GIVENTER AND STEVEN )
24  PRICE,                      )

25        Defendants.           )

26

27  ///

28  ///

                          -1-

            DECLARATION OF MARINA STEIN IN LIEU
                  OF DIRECT TESTIMONY

STATE FARM v. SLAVIK STEIN, etc., et al.          Case No.: 2:10-CV-01332-AHM (FFMx)

1    I, MARINA STEIN, declare:

2        1.    I reside in Los Angeles County, California.

3        2.    Defendant, Slavik Stein aka Stanley Stein ("Slavik"), and I separated

4    December 1, 1998. I filed a Petition to dissolve our marriage in the Los Angeles

5    County, Superior Court in January 20, 1999. We were divorced in Los Angeles,

6    California on September 20, 2000. A true copy of the filed Judgment of Dissolution

7    is Exhibit 4.

8        3.    Slavik paid no support until March, 2004.

9        4.    Pursuant to the Judgment of Dissolution, Slavik owes me monthly

10   spousal support of $500 per month (see Section 2 of the Judgment), and was

11   obligated to pay me child support for both of our minor children of $2,000 per month

12   (See Section 3.1).

13       5.    Both of our children are now adults. Jacqueline attained majority on

14   September 29, 2000, and thus was an adult when the Judgment was filed. Yuri

15   attained majority on May 1, 2003, but did not graduate high school until June 13,

16   2003.

17       6.    Under the judgment, Slavik was obligated to pay me $1,000 per month

18   for child support for Yuri for 42 months for a total of $42,000, and $500 per month

19   as and for spousal support, for a total of $71,000.   The sum of child and spousal

20   support payments due under the judgment totals $113,000.

21       7.    My son, Yuri, lived with me until the summer of 2010.

22       8.    The only payments Slavik made to me since March, 2004 to the present

23   were recorded by me in a notebook. Copies of the pages of that notebook are marked

24   as Exhibit 72.    The total of such payments was $24,027.78.

25       9.    No assets were transferred by Slavik to me since March, 2004, other than

26   the $24,027.78.

27       10.   Slavik owes me unpaid support pursuant to the judgment of dissolution

28   of $88,972.22, without regard to interest which accrues by law.

-2-

*DECLARATION OF MARINA STEIN IN LIEU
OF DIRECT TESTIMONY*

STATE FARM v. SLAVIK STEIN, etc., et al.                              Case No.:  2:10-CV-01332-AHM (FFMx)

1    11.    On July 25, 2000, my father, Semyon Spector, purchased a home for my
2  use at 11538 Dona Pepita Place, Studio City, California 91604. Shortly thereafter,
3  I moved into that home, and lived there with my two (2) children, Jacqueline and Yuri
4  Stein, who are Slavik's children also. I paid rent to my father.

5    12.    Slavik paid no money for its acquisition, nor did he ever make any
6  payments on any encumbrances or any real property taxes.

7    13.    Upon Slavik's release from the halfway house in mid-2004, I allowed
8  him to sleep in a room at the house in Studio City in which I resided with Yuri.
9  Slavik moved out some time during the latter-half of 2005.

10    14.    From time to time, following Slavik's release from federal prison in mid-
11  2004, I allowed him the use of credit cards on accounts for which I was responsible,
12  and he used them. He paid for some of his use. I did not keep records of his use or
13  his repayments, which he made directly to the credit card issuers, but to the best of
14  my memory, such use did not exceed $10,000 in the aggregate, and his payments
15  were not sufficient to repay for his use of my cards.

16    15.    In order to attempt to support myself, on May 6, 2004, I formed a
17  California corporation, named Field Chasers, Inc., with David Everston.    On
18  September 8, 2004, I acquired Everston's interest in the corporation for no monetary
19  consideration.

20    16.    On August 30, 2006, my then wholly owned corporation, Field Chasers,
21  Inc., purchased the Midas Muffler Shop at 220 W. Elk Avenue, Glendale, California
22  91204, including the franchise from Midas International Corporation, from Evans,
23  Inc., for a total consideration of $250,000. Marked as Exhibit 100 is a true copy of
24  the Asset Purchase Agreement, which I signed. Marked as Exhibit 101 is a true copy
25  of the Midas Franchise and Trademark Agreement that was assigned to Field Chasers,
26  Inc. on October 16, 2006. Marked as Exhibit 102, is a true copy of the Assignment
27  of the Midas Franchise and Trademark Agreement. I signed a personal guaranty
28  which is marked as Exhibit 103.

-3-

*DECLARATION OF MARINA STEIN IN LIEU
OF DIRECT TESTIMONY*

STATE FARM v. SLAVIK STEIN, etc., et al.                    Case No.:  2:10-CV-01332-AHM (FFMx)

1    17.    On or about October 6, 2006, I borrowed $150,000 from my father and
2    loaned it to Field Chasers. One Hundred Twenty-five Thousand ($125,000) of those
3    funds was used to fund the down payment for the purchase of the Midas Muffler
4    shop, and the balance was used for working capital.

5    18.    The balance of the consideration for the purchase of the Midas Muffler
6    Shop was made by my execution as President and delivery to the Seller of Field
7    Chasers, Inc. $125,000 Promissory Note, which is marked as Exhibit 106.

8    19.    Exhibit 106 was secured by Field Chasers, Inc.'s Security Agreement,
9    which I signed as its President, and delivered to the Seller with the note. It is marked
10   as Exhibit 107.

11   20.    Slavik has no interest in Field Chasers, Inc., and never did.

12   21.    Slavik is not a signator on any of its bank accounts, nor does he have the
13   power to sign any documents on behalf of Field Chasers.

14   22.    Field Chasers' general manager is my son, Yuri.

15   23.    The two of us were required by Midas to attend three (3) weeks of
16   training by Midas in Palestine, Illinois, as a condition of Midas agreeing to assign the
17   Midas franchise (Exhibit 101).

18   24.    On October 16, 2009, I transferred a one-half interest in Field Chasers,
19   Inc. to my son, Yuri Stein, who has been the general manager of the Midas Muffler
20   shop since its acquisition.

21   25.    On a few occasions Yuri asked Slavik to pick up some merchandise for
22   use by the Midas shop, and Slavik used one of the credit cards I had authorized for
23   his use. Midas paid the charges for that merchandise. Such charges in the aggregate
24   did not exceed $5,000.

25   26.    The only sources of funds that were deposited in Field Chasers accounts
26   were from (1) customers, (2) loans from my bank accounts, (3) advances from my
27   credit cards, or (4) loans from my father.

28   ///

-4-

*DECLARATION OF MARINA STEIN IN LIEU*
*OF DIRECT TESTIMONY*

1      27.    At no time did Field Chasers, Inc. receive any assets from Slavik.

2      28.    In 2004, 2005 and 2006, I invested moneys with Lido Wholesale,
3 Bradley Clevinger, and their attorney, Gerald Werksman. This investment consisted
4 of loans and investments in particular transactions, in which the profits would be
5 shared. I believed the opportunities for significant returns were so great that I urged
6 my father, Semyon Spector, and my aunt, Ella Brodsky, to participate. The aggregate
7 of the funds so invested exceeded Four Hundred Ninety-six Thousand Five Hundred
8 Dollars ($496,500). Thirty-seven Thousand Dollars ($37,000) came from my credit
9 cards, $200,000 came from Ella Brodsky and $259,500 from my father. One Hundred
10 Seven Thousand Three Hundred Seventy-five ($107,375) Dollars was repaid before
11 I filed a lawsuit in the Los Angeles Superior Court for fraud, among other things, on
12 June 17, 2008 because those defendants took the money by way of a "Ponzi" scheme.
13 I obtained assignments of the Spector and Brodsky claims before I sued.    That
14 lawsuit was settled on June 8, 2009, and I received $70,000 net of my attorney fees.

15      29.    Ever since our divorce, my assets have been separate from Slavik's.

16      30.    I was Slavik's judgment creditor for over a year before State Farm
17 obtained its judgment against him.

18      I declare under penalty of perjury under the laws of the United States that the
19 foregoing is true and correct.

20      Executed on this 13 day of October, 2011, at Los Angeles, California.

MARINA STEIN

-5-

*DECLARATION OF MARINA STEIN IN LIEU OF DIRECT TESTIMONY*

STATE FARM v. SLAVIK STEIN, etc., et al.    Case No.: 2:10-CV-01332-AHM (FFMx)